Robert FRENETTE, Plaintiff-Appellant,

v.

CLARKCHESTER CORPORATION, Defendant-Respondent.

No. 48389.

Missouri Court of Appeals,
Eastern District
Division One.

June 18, 1985.

Thomas J. Prebil, Wm. James O'Herin, Friedman Weitzman & Friedman, P.C., St. Louis, for plaintiff-appellant.

James E. Whaley, St. Louis, for defendant-respondent.

KAROHL, Judge.

Plaintiff, Robert Frenette, appeals from the jury verdict in favor of defendant, Clarkchester Corporation, and against plaintiff in an action for damages resulting from injuries plaintiff sustained from a fall on defendant's ice-covered parking lot on January 11, 1979. Plaintiff raises two points on appeal. We reverse and remand.

Plaintiff contends he is entitled to a new trial because of the misconduct of two veniremen. During the voir dire examination of prospective jurors, plaintiff inquired "is there anybody here who has previously had—made a claim where you have sought to recover money damages from someone? For, as a result of an accident or an injury? Anybody have a previous claim, either yourself or your spouse or close relative or friend?" Four veniremen responded and were questioned briefly about their claims. After those responses, plaintiff asked if anyone else had made any claims. Plaintiff asked "[o]f the ladies and gentlemen on the first row, is there anybody here who has filed a claim in the past? And of the four in the back row anybody there has filed a claim?" No one responded. Plaintiff then asked "is there anybody here who has a claim filed against them for any incidents?" One venireman responded. Further questions were asked and answers were returned from this venireman. Subsequently, defendant asked if "anybody else had a claim for personal injuries that, other than those four individuals?" One other venireman responded as to a workmen's compensation claim. This venireman was questioned about the claim. D. Pat Peng and Lawrence Stern, Jr. became members of the jury. During the entire dialogue concerning claims brought by or against any venireman, members of their families or friends, Peng and Stern remained silent.

At plaintiff's motion for new trial hearing, Peng and Stern were called as witnesses. Plaintiff discovered after trial that juror Peng had a petition filed against him for default on a lease demanding $7,641.58 damages and attorney's fees in the amount of $1,146.24. The petition was filed on May 3, 1983. Peng said that he did not know this claim had been filed against him. He did, however, admit that he had received a demand letter prior to plaintiff's trial for the default damages. When asked the question about claims at plaintiff's trial, Peng said that he thought about the matter concerning the demand "however, at that moment, I viewed that as an improper claim or demand and I didn't re-

spond." On cross-examination Peng said that he "made a very quick recollection in my mind that the claim or demand was not related to injury or damage, so I didn't really respond." On redirect examination, Peng was asked again for what reason he did not respond. Peng stated that he "did not respond to the question based upon I made a quick recognition that the possible claim or demand was not related to the question [plaintiff] asked." After trial and upon reflection Peng said that "in my mind I felt that ... was not a proper demand, actually, because [the claimant] assumed the lease and he has signed the papers I have here, right over here. I can show you he assumed the responsibility."

Plaintiff also discovered after trial that juror Stern had brought a suit for personal injury damages on behalf of his son arising out of a 1970 automobile accident. The suit resulted with judgment for plaintiff in the amount of $50,000 against Stern's other son on behalf of the injured son. The case was concluded in 1973 and Stern administered the funds of his minor son until at least 1975. In 1983 at the trial in the present case when plaintiff asked questions concerning any claims, Stern said that he did not recall the suit involving his sons. Stern said that "the only time [the prior suit] came to my mind was after [plaintiff] called me after the trial."

▆ The principles of law which govern our review are well established. Our Supreme Court in *Beggs v. Universal C.I.T. Credit Corporation*, 387 S.W.2d 499, 503 (Mo. banc 1965) restated the relevant rules. In *Rinkenbaugh v. Chicago, Rock Island & Pacific R. Co.*, 446 S.W.2d 623, 626 (Mo. 1969), the court relied on *Beggs* and briefly summarized the rules as follows.

> The constitutional right of every citizen to trial by jury to be meaningful contemplates a fair and impartial jury; it is the duty of a juror on voir dire examination to fully, fairly and truthfully answer all questions directed to him in (and to the panel generally) so that his qualifications may be determined and challenges may be intelligently exercised; a prospective

juror may not be the judge of his own qualifications; bias and prejudice of a juror may be inferred from his intentional concealment of such information; the determination of which question must be left to the sound discretion of the trial court; and the exercise of that discretion is subject to judicial review.

*Rinkenbaugh*, 446 S.W.2d at 626.

In *Anderson v. Burlington Northern R. Co.*, 651 S.W.2d 176 (Mo.App.1983) our court analyzed the many decisions espousing these principles and determined that intentional non-disclosure had become tantamount to a per se rule mandating a new trial regardless of the action taken by the trial judge in ruling upon the motion for a new trial. *Anderson*, 651 S.W.2d at 178.

In the instant case Peng's admission that he knew about the demand made against him but did not inform plaintiff because he "viewed that as an improper claim or demand" was a conclusion made on the part of Peng. The question called for an answer particularly because of Peng's view that claims may be improper. His failure to disclose the information was therefore equivalent to an intentional concealment. A prospective juror is not the judge of his own qualifications. *Girrantono v. Kansas City Public Service Company*, 272 S.W.2d 278, 281 (Mo.1954).

Stern, on the other hand, stated he did not recall a claim he had previously made on behalf of his son. Cases in which the trial court was justified in accepting as an excuse that the claim had been forgotten have been affirmed because the claim was insignificant or remote in time. *See Akers v. St. Louis Public Service Co.*, 370 S.W.2d 347 (Mo.1963); *Davis v. Kansas City Public Service Co.*, 233 S.W.2d 679 (Mo.1950); and *O'Brien v. Vandalia Bus Lines*, 173 S.W.2d 76 (Mo.1943). Stern admitted that he contacted an attorney after the accident involving his sons. He also met with the insurance adjuster and appeared before the court "when they awarded the guardianship [of] the money to be watched over for [Stern's son] for his education." The judgment in Stern's suit was substantial, $50,-

000. He administered the proceeds for several years until his son's majority. Stern also said that although he did not recall the claim when asked questions at trial, he remembered it when called after the trial. The circumstances of Stern's claim, his remembrances thereof at a time after the trial "unduly taxes our credulity to ask us to believe" that Stern forgot his previous claim. *See Triplett v. St. Louis Public Service Company,* 343 S.W.2d 670, 675 (Mo.App.1961). We find the trial court abused its discretion in determining Stern's excuse, that he did not recall his prior claim, was justified. Stern's claim and suit were not insignificant nor too remote in time as not to be considered as an intentional concealment.

We conclude the failure to disclose by jurors Peng and Stern considered separately or together are the equivalent of intentional concealment of information on voir dire examination. Either concealment standing alone suggests the need of a new trial. When considered together a new trial is required. The jury should consist of twelve, impartial, qualified jurors. Even though three-fourths of them can decide a civil case, parties are entitled to have that decision, whether for them or against them, based on the honest deliberations of twelve qualified jurors. *Beggs,* 387 S.W.2d at 503. *See Lee v. Baltimore Hotel Co.,* 345 Mo. 458, 136 S.W.2d 695 (1939).

Plaintiff's second contention is that the trial court erred in giving a contributory negligence instruction. As we are remanding on other grounds we need not decide this issue. We are not constrained to address plaintiff's second point as it will not apply at a second trial in light of the comparative fault doctrine announced in *Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc 1983).

The judgment is reversed and the case remanded for a new trial.

PUDLOWSKI, P.J., and CARL R. GAERTNER, J., concur.